DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Anderson Family Limited Partnership appeals the decision of the Cuyahoga Falls Municipal Court, which rendered judgment in favor of defendant Italia Plumbing, Inc. This court affirms.
 I.
In the spring of 1999, John Anderson approached Chuck Italia to see if Italia Plumbing Inc. would be able to meet or beat an estimate to do rough plumbing on a property owned by Anderson Family Limited Partnership. Anderson had a written estimate from another plumber, but told Italia that his company could have the job if he could meet or beat the $6,600 estimate to do the work at a commercial building under construction on Anderson's property located at 4481 Crystal Parkway, Tallmadge. Italia looked over the estimate and said he would do the rough plumbing for that price. The rough plumbing generally involves laying underground piping and interior pipes that will be covered by walls, floors or ceilings.
Shortly thereafter Anderson approached Italia to do finish plumbing at a slightly larger commercial location under construction located at 4485 Crystal Parkway. The agreement for this job was for time and materials, with time to be billed at $40 per hour. The finish work generally involves installing fixtures such as sinks, toilets, faucets, etc. The parties did not reduce either of the two contracts to writing.
Anderson paid Italia approximately $4,950 of the $6,600 agreed price on the rough work at 4481 Crystal Parkway. Italia separately billed Anderson for the materials for the finish plumbing job at 4485 Crystal Parkway, in the amount of $14,000. Anderson was upset with the materials bill because he believed that the costs were too high. Anderson asked to see Italia's invoices for the materials but Italia refused, saying that he was entitled to mark up his costs. After several meetings to try to resolve the materials charge, Anderson and Italia met on June 11, 1999. Italia was upset because he was late in his payment to his supplier, which was due on the tenth of the month. Anderson prepared a release of mechanics lien that covered all three work sites involving Italia.[1]
Anderson asked Italia to sign the release in exchange for a check in the amount of $9,000.
The lien release stated that Italia was releasing all his claims against Anderson for all three sites in exchange for the $9,000 plus other payments already made by Anderson, for a total compensation of $18,250. The release stated that it covered the total payment "for labor, services, equipment or material furnished to Anderson Family Ltd. [Partnership] through June 11, 1999." It specifically did not cover any claims for goods or services supplied after the release date. Anderson told Italia to sign the release, take the $9,000 check, and "we're through." Italia believed this meant that Italia was being fired and the contracts between the two were terminated. However, when Italia did not return to the work sites the next week, Anderson called Italia to see why he did not return. Italia told him that he had been fired and he would not return.
Anderson got another plumber to finish both jobs. Anderson filed suit against Italia, claiming that it cost him $5,000 to complete the $6,600 rough plumbing job, and that Italia's rough plumbing work was not done in a workmanlike manner. Anderson sought $15,000 in damages. Italia counterclaimed for $5,500 for money he claimed he was owed for his work.
The case proceeded to a bench trial. The trial court found in favor of Italia on Anderson's claim. The court found that: the parties had terminated the contracts by mutual agreement on June 11, 1999; the cost to complete the rough job equaled the unpaid balance of that contract; and the rough plumbing was done in a workmanlike manner. The court found for Anderson on Italia's counterclaim, because the lien release clearly released all claims in existence as of June 11, 1999, and none of Italia's claims against Anderson arose after that date.
 Anderson filed a timely appeal, assigning three errors.
 II.
FIRST ASSIGNMENT OF ERROR:
 THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT CONCLUDED THAT THE LIEN RELEASE OPERATED AS A BAR AS TO ANY CLAIMS BROUGHT BY THE APPELLANT AGAINST [APPELLEE].
 Anderson's first assignment of error is that the trial court improperly determined that the lien release barred any claim by Anderson against Italia arising from the partial performance under the oral contracts. We find this argument to be without merit. The trial court did not state that the release itself barred Anderson from seeking damages against Italia. Rather, the trial court actually reviewed the weight of Anderson's claim of unworkmanlike performance. Thus, it is clear that the trial court did not determine that the release itself barred Anderson's claims against Italia. In fact, the trial court cited the release as a total bar only to Italia's counterclaim for damages based on breach of contract.
Because the trial court did not determine that the release itself barred all claims by Anderson arising out of the contract, the first assignment of error is overruled as moot.
 III.
SECOND ASSIGNMENT OF ERROR:
 THE TRIAL COURT'S FINDING THAT THE PARTIES AGREED TO TERMINATE THEIR RELATIONSHIP WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED.
 Anderson next argues that the trial court's determination that the parties decided to terminate their relationship on June 11, 1999, was against the manifest weight of the evidence.
When evaluating whether a judgment is against the manifest weight of the evidence in a civil context, the standard of review is the same as that in the criminal context. Frederick v. Born (Aug. 21, 1996), Lorain App. No. 95CA006286, unreported, at 14. In determining whether a criminal conviction is against the manifest weight of the evidence:
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the [judgment].
 State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175; see, also State v. Otten (1986), 33 Ohio App.3d 339, 340. Accordingly, before an appellate court will reverse a judgment, the court must determine that the trier of fact, in resolving evidentiary conflicts and making credibility determinations, clearly lost its way and created a manifest miscarriage of justice.
In the instant case, Italia testified that he had pursued payment for the materials costs for the finish plumbing work at 4485 Crystal Creek. Italia testified that he and Anderson had several meetings about the payment for Italia's materials prior to their meeting on Friday, June 11, 1999. Italia testified that Anderson told him to take the $9,000 and sign the release and then "we're through." Italia testified that prior to that moment, Italia said he would come back to finish the work. Italia testified that when Anderson told him to sign the release and "we're through," Italia understood that the contractual relationship was over.
Anderson testified that the release only related to any bills submitted by Italia for the materials for the finish plumbing job. Anderson testified that in exchange for $9,000 Italia was releasing any claim for further payment for these materials. Anderson testified that Italia told him he would finish the work, and Anderson was surprised when Italia was not on the job site on Monday, June 14 to finish the work. Anderson testified that he called Italia to come to work and when Italia refused to return to work, Anderson wrote a letter urging Italia to complete the job. However, Italia testified that he first heard again from Anderson via Anderson's letter of June 16, 1999, which threatened legal action if Italia didn't complete the job.
It is well established that at trial "either civil or criminal, the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus. In the instant case, the parties presented conflicting testimony about whether they intended to terminate or continue their oral contract. This court cannot conclude that the trial court, in weighing the evidence including the parties' testimony, clearly lost its way and created a manifest miscarriage of justice when it determined that the parties terminated their contracts by mutual agreement on June 11, 1999.
Anderson's second assignment of error is overruled.
 IV.
THIRD ASSIGNMENT OF ERROR:
 THE TRIAL COURT'S FINDING THAT THE WORK WAS PERFORMED IN A WORKMANLIKE MANNER WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED.
 Anderson suggests that the trial court clearly lost its way when it determined that Italia's work on the rough plumbing job was done in a workmanlike manner. Anderson has the burden of proof to show that the job was not done in a satisfactory manner.
At trial, Anderson proffered the testimony of the Tallmadge building inspector who inspected the rough plumbing in April and again in September 1999. At issue was the underground plumbing line. In April, Italia dug a trench and laid the plumbing pipe, partially embedded in gravel. At that point the building inspector conducted his usual visual inspection to determine that the pipe was laid at the proper depth and with the proper pitch. The pipe passed the inspection, and at a later point the pipe was completely covered with dirt. The inspector testified that the pipe passed his inspection on April 22, 1999. He testified that he usually inspects the pitch of a pipe visually, which he did on this occasion. He found that the pitch was appropriate for proper drainage.
When the second plumber was called to complete the rough plumbing and do the finish plumbing at 4481 Crystal Parkway, this plumber determined that the toilets did not flush properly. This plumber determined that there was a low spot in the pipe, causing poor flow. He testified that it could be fixed by picking up the concrete over the area and lifting up the pipeline. This plumber admitted on cross-examination that the low pipe problem could have arisen after Italia properly installed the pipe.
Given this testimony, this court cannot conclude that the trial court clearly lost its way in determining that Italia's work, which passed city inspection on April 22, 1999, was done in a workmanlike manner.
Anderson's third assignment of error is overruled.
 V.
Having overruled all three assignments of error, we affirm the judgment of the trial court.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the County of Summit, Cuyahoga Falls Municipal Court, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
___________________________ WILLIAM R. BAIRD
BATCHELDER, P. J., WHITMORE, J., CONCUR.
[1] Italia also did some repair work on another site, 4465 Crystal Creek. That job is not in dispute here.